(C.D. 3937)

LENKURT ELECTRIC CO.
FRANKLIN B. HOWLAND } *v.* UNITED STATES

United States Customs Court, Second Division

(Decided December 3, 1969)

*Glad & Tuttle* (*George R. Tuttle, Jr.*, of counsel) for the plaintiffs.
*William D. Ruckelshaus*, Assistant Attorney General (*Bernard J. Babb*, trial attorney), for the defendant.

Before RAO and FORD, Judges, and DONLON, Senior Judge

DONLON, Judge: The articles at bar are identified as supergroup modems. They were imported from France and are components of equipment for the transmission and reception, by electromagnetic radio waves, of messages which originate and terminate through telephone equipment and over telephone wires.

The supergroup modems at bar were classified in liquidation as telephone apparatus, under the Tariff Act of 1930, paragraph 353, and charged with duty at the modified rate of 17½ percent ad valorem.

Plaintiffs' protest claim is that tariff classification should be as radio apparatus, or parts thereof, likewise under paragraph 353, but with duty at the applicable modified rate of 12½ percent ad valorem; or, alternatively, either as articles having as an essential feature an electrical element or device, or as articles for controlling, distributing, modifying, producing or rectifying electrical energy, both also under paragraph 353, with duty in the first interpretation at the modified rate of 13¾ percent, and in the second at the modified rate of 15 percent.

The pertinent provisions of paragraph 353, as modified, are as follows:

Paragraph 353, Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade (T.D. 51802):

> Electrical apparatus, instruments (other than laboratory), and devices, finished or unfinished, wholly or in chief value of metal, and not specially provided for:
>> Telegraph (including printing and typewriting), telephone, and therapeutic (including diagnostic) _____ 17½% ad val.

\*      \*      \*      \*      \*      \*      \*

> Articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy, and articles having as an essential feature an electrical element or device, such as electric motors,

fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs; all the foregoing (not including electrical wiring apparatus, instruments, and devices), finished or unfinished, wholly or in chief value of metal, and not specially provided for:

\*      \*      \*      \*      \*      \*      \*

    Other articles (except machines for determining the strength of materials or articles in tension, compression, torsion, or shear; flashlights; batteries; vacuum cleaners; and internal-combustion engines) _____ 15% ad val.

Paragraph 353, Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade (T.D. 52739):

    Electrical signaling, radio, welding, and ignition apparatus, instruments (other than laboratory), and devices, finished or unfinished, wholly or in chief value of metal, and not specially provided for (not including television apparatus, instruments, or devices) _____ 12½% ad val

\*      \*      \*      \*      \*      \*      \*

    Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

\*      \*      \*      \*      \*      \*      \*

    Other \* \* \* _____ 13¾% ad val.

The relevant provisions for parts, in both modifications, are for duty at the same rate as the articles of which they are parts, that is, 17½ percent for parts of telephone apparatus and 12½ percent for parts of radio apparatus.

Much of the testimony before us is technical, having to do with the nature of radio and telephone transmission and reception.

Plaintiffs' witness testified that "modem" is a coined word derived from the words "modulator" and "demodulator"; that the modems at bar are supergroup modems; that "supergroup" designates a particular area of the frequency band involved in modulation and demodulation; that the descriptive numbers designating the modems at bar are to distinguish each such modem according to the signal it uses to modulate (or demodulate) the input, so as to obtain a particular frequency band.

Responding to counsel's request that he state technical matter in "common language", the witness described the supergroup modems at bar, as follows:

> They are composed of a transmitting modulator, a band pass filter, in each of the modems there are three modems which mount in a common shelf, or as they term it in their documents, a rack, which is common language in Europe. Each of the three modems contains the transmitting modulator, each has its own band pass filter, and from there they are combined through a common transmitting amplifier. And then in the receiving direction they have a splitting device, hybrid transformers, to separate the signals into the three different modems where they are again filtered through the band pass filter, demodulated in a demodulator, and then amplified for delivering to the associated equipment. [R. 20, 21.]

The supergroup modems at bar have an input capacity of up to 48 individual voice signals; but before these 48 voice signals reach the supergroup modems, the individual voices are put through a channel modulator and then through two grouping modulators, in order to get them into the combined input signal which is fed into the supergroup modem. This combining of individual voice input signals into a single input signal, before it is passed through the supergroup modem, is a process that is called "multiplexing". The combined input signal is used, in the supergroup modem, to control the wave shape of the carrier frequency, that is, the frequency that carries the signal by microwave to an intended receiver. The combined carrier wave and input signal that emerge from the supergroup modem is applied to the microwave resistance frequency (RF) equipment, which transmits the signal through the air by means of a directional beam.

While not precisely stated, it is clearly implied that at the receiving end the RF receiver detects the directional beam and converts the signal back to the supergroup input frequency, after which the signal is separated, through further modems, to the original individual voice input, a process which is called demodulation.

The witness was firm in his assertion that these supergroup modems were designed for and were used only in radio microwave communications systems, although plaintiff Lenkurt (his employer) does also manufacture cable communications systems and open wire communications systems.

It seems clear that these supergroup modems are components of the radio, or wireless, feature of communications transmission which, in its totality, makes use both of radio (wireless) and telephone (wired) apparatus, a system that is commonly referred to as radio-telephony.

Overseas telephone conversations, for example, are carried on through use of such a combination of radio and telephone transmission.

The tariff enumerations for telephone and radio apparatus (and their parts) are more specific than the general enumerations for articles having as an essential feature an electrical element or device, or as articles for controlling, distributing, modifying, producing or rectifying electrical energy. Even if it were conceded that these modems are such articles, the provisions for telephone apparatus and for radio apparatus, and their parts, will prevail if applicable.

Cited are:

> *Marconi Instruments, Ltd.* v. *United States*, 38 Cust. Ct. 311, C.D. 1880 (1957).

> *United States* v. *Electrolux Corporation*, 46 CCPA 143, C.A.D. 718 (1959).

> *United States*, (*Lansen-Naeve Corp. a/c Albert Klingelhofer, Party-in-Interest*) v. *Simon Saw & Steel Company*, 51 CCPA 33, C.A.D. 834 (1964).

> *Gehrig, Hoban & Co., Inc.* v. *United States*, 61 Cust. Ct. 344, C.D. 3628, 293 F. Supp. 433 (1968).

There is no controversy here as to the fact that these modems are parts of such a communications transmission system, and we so find. It is unnecessary to cite authorities.

The real issue here is whether these supergroup modems are parts of radio apparatus *or* parts of telephone apparatus.

We have the problem of classifying, for tariff purposes, a part of a communications system that begins with wire transmission of voice and ends with wire reception of that voice, but in which transmission between that beginning and ending uses radio microwaves. The particular parts at bar, the supergroup modems, operate in the microwave phase of the transmission, taking the voice input after it has already passed through lesser modems, combining it with a certain carrier frequency, and passing this combined signal to a microwave transmitter. They operate also, at the other end of the microwave transmission, to receive and separate the combined signal.

It is noted that the competing tariff paragraphs under scrutiny provide tariff classification for apparatus and its parts; in the one case telephone apparatus, and in the other, radio apparatus. The classifications are *not* for telephone and radio transmission systems. In *United States* v. *Mannesmann-Meer, Inc.*, 54 CCPA 24, C.A.D. 897 (1966), our appeals court considered a tariff provision for electrical welding apparatus and relied on lexicographic definitions in arriving at the opinion that *apparatus* is a combination of articles and materials which

are "intended, adapted, and necessary for the accomplishment of some purpose".

From the evidence of record, it appears that the supergroup modems at bar are articles "intended, adapted, and necessary for the accomplishment" of radio microwave transmission. Hence, they are parts of radio apparatus. That they may be linked, before and after the radio transmission, to articles which are parts of telephone apparatus, in a communications system in which both wire and wireless communication cooperate, does not remove them from the more appropriately descriptive classification as parts of radio apparatus.

Judgment will be entered accordingly.